SOUTHWICK, P.J.,
for the Court:
¶ 1. Maurice D. Esco was convicted by a Madison County Circuit Court jury for sale of cocaine. On appeal Esco alleges that two discovery problems should have led to a mistrial, that testimony identifying Esco as the drug seller should have been excluded as being unfairly tainted, that cross-examination of a State witness was improperly limited, and that a jury instruction on the credibility of paid informants should have been given. We find no merit to these issues and affirm.
FACTS
¶ 2. On April 8, 1997, Bureau of Narcotics Agent Willie Watkins participated in a number of undercover drug purchases in Canton, Mississippi. He was accompanied to the sales by a paid confidential informant named Robert Armstrong. During the day, Watkins purchased two rocks of crack cocaine from a person whom Armstrong identified before the purchase as Maurice Esco.
¶ 3. Five to seven days following the drug buy, Watkins obtained a photocopy of Esco’s driver’s license. From this photograph Watkins reassured himself that Esco was the person from whom he purchased cocaine. Esco was later arrested and indicted for the sale. The confidential informant Armstrong did not testify at trial. Esco was found guilty by the jury and sentenced to ten years imprisonment. This is his appeal.
DISCUSSION

I. The State’s failure to produce the proper audiotape

¶ 4. Esco argues that a mistrial should have been declared when the trial court concluded that an audiotape provided to Esco during discovery may not have been the same one that the State wanted to introduce at trial. The most important fact on this issue is that the tape was never introduced. Esco argues that a mistrial was needed anyway because his trial *1251 counsel “prepared his entire defense of Mr. Esco based on the existence of such a tape and explored the issue in his cross-examination” of Agent Watkins. There allegedly was extensive prejudice arising from the reference in front of the jury to the tape, but then the jury never heard the tape itself.
¶ 5. To understand the factual basis for Esco’s point about prejudice, we summarize the cross-examination. Esco’s counsel examined Agent Watkins who made the purchase, about the failure of the video equipment to operate. The camera that Watkins had in his vehicle should have captured Esco on film when he was at the window of the agent’s car. Then counsel asked Watkins the only four questions that deal with an audiotape. First he asked Watkins if there was audiotape equipment. Counsel then asked if he brought the tape with him. Next was asked whether Esco’s voice was on the audiotape. When the agent stated that he had not listened to it, the counsel asked if he would like to do so. That is all the jury heard asked about the tape.
¶ 6. As preparations were made to play the tape, a discussion occurred outside the presence of the jury between the attorneys and the court. The prosecutor announced that the equipment that would allow the tape to be heard by the jury, as opposed to through headphones, had not been brought. As that discussion proceeded, Esco’s counsel stated that in discovery he had been provided a different format tape. The prosecutor stated that no tape in that format existed on the case. Eventually the jury was excused so that the tape could be played before a decision was made on its introduction.
¶ 7. A variety of arguments and responses by the court were made at the hearing. The problem was said to be a discovery violation. Esco’s counsel also argued that tape had statements- different from those on the “other” tape. The only difference specifically referenced during the short hearing was that the informant Robert Armstrong said Esco’s name three times on this tape, and those statements were not on the version of the tape that the defense had been provided before trial.
¶ 8. On this record it is difficult to understand the differences between the two tapes, if in fact there ever were two versions. The trial court stated that the trial tape was nearly inaudible. If there was another tape that Esco’s counsel had heard, it was not available such that a comparison could be made. Based on the representations of Esco’s counsel that the tape that he heard before trial did not have Armstrong identifying Esco, the court agreed to exclude the offered tape. The court found that if Armstrong actually did say Esco’s name three times on the tape, and the defense had not earlier been provided the tape, then the probative value of its introduction would be outweighed by the prejudice arising from the surprise to the defendant.
¶ 9. Had this been a discovery violation, a uniform circuit court rule controls the judge’s response. U.C.C.C.R. 9.04(1). Under the rule, once the defense objected as occurred here, the trial court is to give his counsel a reasonable opportunity to become familiar with the undisclosed recording. If counsel then claims unfair surprise or prejudice, generally the court should exclude the evidence or grant a continuance. Id.
¶ 10. The trial court did not quite follow these guidelines but the protections were applied. When the defense objected to the recording, the trial court listened to it and determined that it had no probative value and should not be admitted. Esco received in that process more than was required. There is no error prejudicial to him arising from the discovery rules problem.
*1252 ¶ 11. Though the judge excluded the recording, Esco still wanted a mistrial. After the motion for mistrial was denied, Esco’s trial counsel agreed that the proper means to handle the problem with the tape was to announce to the jury that it had no probative value as to the identity of the person engaged in the sale. We do not find any merit to the argument that this snafu with the tape prejudiced Esco because he had extensively addressed the tape on cross-examination. Four questions is not extensive cross-examination. The trial court handled the unusual problem in an even-handed manner.

II. Failure to produce the photograph of Esco that Agent Watkins had examined

¶ 12. A second issue relating to discovery was that the document with Esco’s picture that Agent Watkins had used a few days after the drug purchase could not be found. By “document,” we are referring to what probably was a normal letter-size paper photocopy of a driver’s license. During Esco’s cross-examination of Agent Watkins, the witness stated that a few days after the drug sale a copy of Esco’s driver’s license photograph and the license’s printed information had been provided to him by another law enforcement officer. On appeal Esco argues that Watkins’s sole basis for being able to identify him was this picture with Esco’s name on it. That is not a fair summary of the testimony, but the issue must be pursued nonetheless.
¶ 13. Counsel’s first knowledge of the picture was from the copy that had been given him in discovery. At trial it became obvious that this was a copy of a replacement picture and license information, not a copy of the exact document that Watkins had used a few days after the drug purchase. The picture was too dark to decipher, so the trial was delayed as someone went to the state highway patrol office in Jackson seeking a new version. That ultimately could not be obtained. The jury never saw the exact copy that Watkins had used.
¶ 14. What finally was introduced was an extraordinarily poor, indeed an indecipherable photocopy. It was a copy of what the prosecutor had given Esco in discovery. Watkins stated that what he saw was similar to what was introduced, except that Esco’s face could be discerned.
¶ 15. This is not a discovery problem. Instead, the State had lost the original of the item in question. The prosecution cannot produce what no longer exists. A criminal prosecution is not to be abandoned simply because something used during the investigation cannot be found. There can be issues of the centrality of the lost evidence, or bad faith and prosecutorial misconduct for the loss of the evidence, but that was not shown here.
¶ 16. The central question is whether Esco was the person from whom the undercover officer purchased cocaine. The officer testified that the photocopy examined by him a few days after the purchase confirmed that the person he had just seen was Esco, just as the confidential informant told him the day of the purchase. Introduced into evidence by Esco at trial was a photocopy that is more a silhouette than anything with distinguishablé facial features. The copy was probably not admissible by the State because of the absence of adequate proof that it was a duplicate or even fairly represented what Watkins had used. M.R.E. 1001(4) & 1003.
¶ 17. The defense could make whatever arguments to the jury that were appropriate regarding whether the officer had in fact seen a driver’s license photograph a few days after the drug purchase. On the other hand, if the officer did actually ex7 amine Esco’s driver’s license, we are at a *1253 loss as to what significant benefit to Esco would occur from that photograph’s introduction. It would either be a good likeness or would not. Unless Esco is not the person pictured on the driver license that the officer obtained that had Esco’s name on it, the matter of the missing original is a false issue. The point being made does not depend on the quality of this exhibit at trial. Evidence was presented to the jury that Watkins had seen a picture of Esco, with his name alongside or underneath, which may have unfairly affected his identification of the person from whom he had purchased drugs.
¶ 18. Moreover, the general rule is that “a defendant cannot complain of the evidence which he himself brings out.” Simpson v. State, 366 So.2d 1085, 1086 (Miss.1979). Here Esco was responsible for introducing the blackened photocopy into evidence. There certainly can be no error of which he can complain. No mistrial needed to be declared as Esco now alleges.
¶ 19. The issue of the sufficiency of agent Watkins’s identification of Esco is addressed next.

III. Watkins’s identification of Esco at trial should have been excluded

¶ 20. Esco makes two separate issues about Watkins’s testimony that identified Esco. We join them here. The first argument is that the identification was hearsay. The basis of this argument is that Watkins was informed of Esco’s identity prior to. the transaction. Specifically, the informant Armstrong’s pre-buy statement to Watkins of “there goes Maurice” is said to be hearsay. However, Watkins did not proceed directly to the witness stand after the statement by Armstrong identifying Esco. Of course Esco knows that, but his argument does not seem to countenance that fact. Anybody who introduces one person to a stranger will always be the first source of linking a name with a face. That does not make later testimony irreparably affected by the hearsay information if additional and non-hearsay sources for knowledge of identity then arise.
¶ 21. The technical point that testimony about the original introduction is hearsay may be correct, but the real issue is whether the witness later received adequate first-hand confirmation of identity. Thus we move to Esco’s second argument that identification was never fairly proven.
¶ 22. To understand the argument, perhaps it would be useful to state it abstractly. The progression of events that trouble Esco are these: 1) a confidential informant points out to a law enforcement officer a particular alleged drug seller prior to the sale; 2) he gives the officer that person’s name; 3) the sale occurs; the officer had a good view of the seller and no evidence is introduced that he did not believe it was the same person pointed out to him earlier that same day; 4) a few days later that officer gets a photocopy of a driver’s license to assure himself that the person he saw was the person named by the informant; and 5) at trial the witness positively identifies the accused. Is that fifth identification tainted in some way?
¶23. Usually alleged taint arises solely from something that occurred after the crime. Identifications that are unduly suggestive, such as the showing of a single photograph of the suspect to an eyewitness to a crime, are usually the focus. Here the suggestive conduct predates the crime because of listed events 1 & 2, and also arises afterwards because of event 4. We see no reason categorically to hold that a tainted identification cannot arise from circumstances that precede the witness’s view of the person engaging in the crime in question. Thus we use the analysis that traditionally applies to such questions even if the circumstances here are non-tradi *1254 tional. Before beginning that examination, we note that Esco relies on case law that predates the operative United States Supreme Court case. E.g., Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). These cases foreshadowed current law, but it is more useful to proceed directly to Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
¶ 24. To be considered are these issues: a) the opportunity that the witness had to view the defendant when the crime occurred; b) the witness’s attention at that time; c) the accuracy of any prior descriptions of the defendant by the witness, d) the witness’s level of certainty at the initial post-crime confrontation, and e) the length of time between the crime and the confrontation. Id. at 199, 93 S.Ct. 375.
¶ 25. First, Watkins was able to observe Esco from a distance of less than five feet and in broad daylight for a period of approximately one minute. The opportunity to observe came during the relative calm of a simple transaction where nothing was around to confound the observation.
¶ 26. This impacts the second factor, which is the degree of attention paid by the witness. Watkins had every reason to observe the seller closely. He was there to make a case against this person and was aware that he would be required to make an identification at a later date. Watkins testified that he paid close attention for that very reason.
¶ 27. The third consideration is the initial accuracy of Watkins’s description of Esco. There is not much evidence of such an identification. We note the absence of any evidence that in any of the five events enumerated above, Watkins ever expressed doubts that the person originally pointed out to him as Esco was the person at the other events.
¶ 28. The fourth issue is the degree of certainty exhibited by the witness. Watkins was positive about Esco’s identity. About this Watkins never wavered.
¶ 29. The last part of the analysis is the length of time between the crime and the identification. The initial identification was made by Watkins some five to seven days following the sale. This length of time has not been found by courts to be troubling. Moreover, the combination of opportunity to observe, degree of attention, accuracy of description and certainty has been held to overcome the passage of time. See United States v. Drougas, 748 F.2d 8 (1st Cir.1984).
¶ 30. In summary, the evidence “viewed in the light most favorable to the State, must be deemed as sufficiently strong to allow a fair-minded jury to accept it as overcoming the taint of the passage of time.” Gayten, 595 So.2d at 417-418. Watkins’s use of a photograph a few days after the crime was not imper-missibly suggestive nor did it taint his in-court identification. We do not dismiss out-of-hand Esco’s concerns about the unreliability of some eyewitness testimony, nor that on occasion witnesses who had no doubt were nonetheless wrong. The United States Supreme Court calls on us to examine the issue in the manner that we did. It is a fair means to measure reliability. We find Watkins’s identification to satisfy the standard.

IV. Limits on cross-examination of Agent Watkins

¶ 31. Esco’s counsel attempted to elicit testimony concerning the nature of all other undercover drug transactions in which Watkins participated. He was trying to show that the very number of the purchases made it difficult for Watkins reliably to remember the suspects. The trial court limited that examination to transactions occurring on the same day as the alleged buy from Esco.
¶ 32. The accused in a criminal trial has a fundamental right to cross- *1255 examine witnesses testifying against him. Sayles v. State, 552 So.2d 1383, 1387 (Miss.1989). However, the rule does not allow unfettered cross-examination on any matter affecting the credibility of witnesses. The privilege only extends to any matter that is relevant. White v. State, 532 So.2d 1207, 1217 (Miss.1988). Accordingly, “the scope of cross-examination though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters.” Heflin v. State, 643 So.2d 512, 518 (Miss.1994).
¶ 33. Here Esco attacked Watkins’s credibility by attempting to show that Watkins’s recollection for detail was poor. He inquired about other drug purchases in which Watkins participated. Watkins stated that he did not recall the details of the other four or five transactions that occurred on the day that a purchase was allegedly made from Esco. When counsel asked about transactions that occurred on other dates, the trial court sustained the State’s objection for relevancy.
¶ 34. The effect of the trial court’s limitation was to narrow the focus of the cross-examination but not to block the thrust of the effort. The jury learned of Watkins’s difficulties remembering other crimes that same day. Inevitably the jurors inferred that Watkins had difficulty remembering the myriad of transactions in great detail. Extending the examination ad nauseam would have added nothing except nauseam. Esco was not prejudiced by the limitation since Watkins’s ability to recall detail was proven.

V. Absence of instruction on the credibility of paid confidential informants

¶ 35. Esco’s final assignment of error is that the trial court failed to instruct the jury about the credibility of paid confidential informants. Such instructions normally address the caution with which jurors should accept the testimony, but here the informant did not testify. Even so, Esco argues that the trial court erred in failing to grant such an instruction. No such instruction was requested by the defense and Esco’s counsel stated that he had no objections to the instructions that were given. An instruction on the credibility of informants is not so fundamental that a court must grant one sua sponte. White v. State, 722 So.2d 1242, 1247 (Miss.1998).
¶ 36. Here, there was a general instruction that the credibility of all witnesses was for the jury. To the extent that Agent Watkins referred to the informants’ initial pointing out of Esco, the problems with that were tested under the standards established by Neil v. Biggers. The missing instruction on informant credibility did not affect the jury’s deliberation.
¶ 37. It bears noting that Esco raises the specter on appeal of ineffective assistance of trial counsel. The argument primarily focuses on the absence of an instruction about an informants’ credibility. That omission does not suggest counsel ineffectiveness.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION FOR SALE OF COCAINE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ„ CONCUR.
IRVING, J„ CONCURS IN RESULT ONLY.