CHANDLER, J.,
for the Court.
¶ 1. Appellant Kevin Davis was indicted by a Harrison County grand jury for burglary of a dwelling, robbery, rape, and aggravated assault. Following a trial, a jury found Davis guilty of the crimes charged. The circuit court judge sentenced Davis to life without the possibility of parole pursuant to section 99-19-83 of the Mississippi Code. Aggrieved, Davis appeals, asserting that the trial judge erred when he denied Davis’s peremptory strike of one of the jurors, finding that the strike was racially discriminatory and in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Davis also contends that the trial judge erred when he permitted testimony of the victim’s prior identification from a photographic lineup as the circumstances surrounding the identification were impermis-sibly suggestive. Finding no error, we affirm.
FACTS
¶ 2. On January 24, 1997, Jane Doe, a Vietnamese-American, and her three children were asleep in the living room area of their house when they heard a crashing sound come from the adjacent kitchen. Jane, startled by the unexpected noise, jumped to her feet and turned on a light. She could hear footsteps emanating from the kitchen. Within seconds, a knife wielding man appeared and demanded Jane give him all of her money; he threatened to kill her if she failed to comply.
¶ 3. Jane struggled with the man for several minutes until he cut her finger. She gave him all of the money and jewelry in the house. The assailant ordered her to rip the phone line from the wall and Jane complied. He then dragged her into a back bedroom where he forcibly raped her at knife point.
¶ 4. Following the rape, the man ordered Jane to put her clothes back on. He then grabbed two leather jackets from the closet, stuffed them into a bowling bag, and left through the back door.
¶ 5. Jane gathered her children and went to her aunt’s house. She was then transported to the hospital. The physician in charge of examining Jane noted that certain marks on her body were consistent *1263 with those found on rape victims. The physician also collected tissue samples to be used in a DNA analysis.
¶ 6. Four days later, Jane identified her assailant from a photographic lineup. The police arrested Kevin Davis, the individual in the photograph. They recovered one of the stolen jackets from Doris Webb; Webb testified that Davis had given her the jacket. The results of the DNA test demonstrated that there was a 1 in 59 million chance that Davis was not the assailant.
I. DID THE TRIAL COURT ERR WHEN IT DENIED DAVIS’S PEREMPTORY CHALLENGE AS RACIALLY DISCRIMINATORY?
¶ 7. Davis contends that the trial court erred when it denied his use of a peremptory strike in violation of Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record reflects that Davis used his first peremptory challenge to strike Sherwin Agustín, a juror who appeared to be of Asian descent. The prosecution challenged the strike, arguing it was merely a pretext for removing Agustín who, because of race, would be inclined to sympathize with the Asian victim. Davis maintains that the trial court lacked the authority to overrule his peremptory strike as the court never required the prosecution to make out a prima facie case of racial discrimination as required under Batson. In support of this contention, Davis points out that it was not even clear whether Agustín was Asian.
¶8. Determinations made by the trial judge under Batson are factual and largely based on credibility. Puckett v. State, 788 So.2d 752, 756 (¶ 8) (Miss.2001); McGilberry v. State, 741 So.2d 894, 923 (¶ 118) (Miss.1999). Accordingly, we afford the trial judge great deference and will not reverse unless the findings are clearly erroneous or against the overwhelming weight of the evidence. Simon v. State, 679 So.2d 617, 622 (Miss.1996). See also Hughes v. State, 735 So.2d 238, 251 (¶ 37) (Miss.1999) (noting that the trial judge, as a fact finder, is always in the best position to evaluate the credibility of the strikes).
¶ 9. The Batson fine of cases prohibit the use of peremptory strikes as a vehicle for racial discrimination in criminal proceedings. Stewart v. State, 662 So.2d 552, 557 (Miss.1995). This purpose is effectuated through a three step process:
First, the defendant must establish a prima facie case that race was the criteria for the exercise of the peremptory challenge .... Second, should the defendant make such a showing, the striking party then has the burden to state a racially neutral explanation for the challenged strike. If a racially neutral explanation is offered, the defendant may rebut the explanation. Finally, the trial court must make a finding of fact to determine if the defendant has proved purposeful discrimination.
Magee v. State, 720 So.2d 186, 188 (¶ 7) (Miss.1998) (citations omitted).

A. Prima Facie Case

¶ 10. Before the trial court is required to conduct a Batson hearing, the opponent of the strike must make out a prima facie case of purposeful racial discrimination. Puckett v. State, 737 So.2d 322, 334(¶30) (Miss.1999). Traditionally, the Batson decision required the defendant to establish a prima facie case of intentional racial discrimination by showing: (1) that he is a member of a cognizable racial group; (2) that the proponent has exercised peremptory challenges toward the elimination of veniremen of his race; and (3) that the facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking jurors on account *1264 of their race. Sudduth v. State, 562 So.2d 67, 71 (Miss.1990) (citing Batson, 476 U.S. at 96, 106 S.Ct. 1712). These requirements, however, were revised in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), where the United States Supreme Court held that the defendant was entitled to challenge a peremptory strike, regardless of whether the excluded jurors were members of the defendant’s race. Powers, 499 U.S. at 415, 111 S.Ct. 1364. Moreover, in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the United States Supreme Court further amended the scope of Batson, holding that the rules prohibiting the racially discriminatory use of peremptory challenges applied to defendants as well as the prosecution. McCollum, 505 U.S. at 59, 112 S.Ct. 2348; Griffin v. State, 610 So.2d 354, 356 (Miss.1992). These two cases, in effect, eliminate the first two elements that were originally required to prove a prima facie case of discrimination under Batson. Bush v. State, 585 So.2d 1262, 1267-68 (Miss.1991). Thus, in order to establish a prima facie case, the opponent must simply show that the facts and circumstances give rise to an inference that the proponent used his peremptory challenges for a racially discriminatory purpose. Puckett, 788 So.2d at 757 (¶ 10).
¶ 11. After Davis used his first peremptory challenge against Agustín, the only Asian on the jury panel, both the trial judge and the prosecution raised a Batson objection. The trial judge expressed his concerns that Davis had used his strike as a means of excluding Asians from the jury; however, he did not, contrary to Davis’s argument, require Davis to state race-neutral reasons for the strike. Instead, the trial judge told Davis that he could articulate his race-neutral reasons if he desired to do so. Davis did not put forward any reasons and the trial judge then permitted the prosecution to make out its prima facie case of discrimination. The record reflects the following exchange:
Prosecution: Your honor, first I would submit that Mr. Agustín is the only person that appears to be of Asian background on the entire panel. We are dealing with a victim who is of Asian descent. I think that the fact that the very first strike, and a strike that the defense makes, is of an Asian ethnic background male, reaches the level where we don’t have any other pattern to show. That she should be required to give a race neutral reason.... If we had one black person on this panel and that was it, out of 24, and we struck that person you can bet we’d be required to tell race neutral reasons.
Defense: Your honor, again there is ... nothing on this record to indicate other than your personal opinion or [the prosecution’s] personal opinion what this individual’s ethnicity is. And I exercised my strike without any thought of that. There is nothing in the record to inform me or any information that I can rely on in reaching the conclusion that this individual is or is not [Asian],
¶ 12. The court considered the arguments of both sides and made a finding on the record that the prosecution had made out a prima facie case of racial discrimination. We agree with the trial judge and find that an inference that Davis used his peremptory strike in a racially discriminatory manner could be made where both the victim and Agustín were Asian, Agustín was the only Asian on the jury, and Agustin was Davis’s first strike. In reaching this decision, we emphasize that the trial judge, as the finder of fact, was in the best position to weigh the facts and circumstances of the peremptory challenge, including whether Agustín was Asian. The trial judge concluded that he was in fact Asian, or of Asian descent. There is no *1265 evidence in this record or Davis’s briefs to contradict this finding; therefore, we cannot say that the trial judge acted erroneously in reaching this conclusion.

B. Race-Neutral Explanations

¶ 13. After the opponent of the strike establishes a prima facie case of discrimination, the burden shifts to the proponent to advance race-neutral reasons for striking a member of a distinct racial group. Bush, 585 So.2d at 1268. The proponent, however, does not have to articulate the same degree of justification that would be required to satisfy a strike for cause. Id. Rather, “any reason that is not facially violative of equal protection will suffice.” Stewart v. State, 662 So.2d 552, 558 (Miss.1995). See also Randall v. State, 716 So.2d 584, 588 (¶ 16) (Miss.1998) (stating that “[ujnless a discriminatory intent is inherent in the [proponent’s] explanation, the reason offered will be deemed race neutral”).
¶ 14. Davis argued that he challenged Agustín because “he did not respond verbally to any question during voir dire either from the Court, the State or myself.” This was the only reason offered and the trial judge rejected it. The judge stated:
It’s always a tough call, but I can’t think of that being a neutral reason that the juror didn’t respond because I think that most jurors, or a good number of the jurors, certainly up to 50 percent of the jurors who are impaneled in my history, don’t make any responses. So I’m going to find that that was not an ethnic neutral reason. We will just have to go on the record made and he will be placed in the box.
We agree with the trial judge and find that the reason given by Davis for striking Agustín was not race-neutral. As the trial judge pointed out, over half of those paneled for jury service do not respond to questions during voir dire. However, the trial judge admitted it was a close call, and that Davis’s reason might, in some cases, be a valid consideration for striking a juror. This is the very reason that we invest a great amount of discretion in the trial judge under Batson; the trial judge is in the best position to weigh the given reason for the strike against all other relevant facts and circumstances. See Stewart, 662 So.2d at 559 (stating that even the smallest details, such as the attorney’s demeanor can be indicative of whether the strike is pretextual). Again, there is nothing in the record that gives this Court any reason to find that the trial judge acted in an erroneous manner when he concluded that the reason offered by Davis was not race-neutral.
II. DID THE TRIAL COURT ERR WHEN IT DENIED DAVIS’S MOTION TO SUPPRESS EVIDENCE OF THE OUT-OF-COURT PHOTOGRAPHIC IDENTIFICATION MADE BY THE VICTIM?
¶ 15. The admission or exclusion of evidence is largely within the discretion of the trial court. Hentz v. State, 542 So.2d 914, 917 (Miss.1989). A trial court’s ruling on the admissibility of a witness identification is reviewed for clear error. Neil v. Biggers, 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This Court will not reverse a trial court’s denial of a defendant’s motion to suppress a pretrial photographic lineup identification unless there was a substantial likelihood of irreparable misidentification. Hansen v. State, 592 So.2d 114, 137 (Miss.1991); Wingate v. State, 794 So.2d 1039, 1042(¶ 8) (Miss.Ct.App.2001). In making this determination, we look to “whether or not substantial credible evidence supports the trial court’s findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly *1266 tainted.” Gray v. State, 728 So.2d 36, 68 (¶ 159) (Miss.1998). We will disturb the lower court’s findings “only where there is an absence of substantial credible evidence supporting it.” Ray v. State, 503 So.2d 222, 224 (Miss.1986).
¶ 16. Davis argues that the admission of the photographic identification was impermissibly suggestive and, therefore, amounted to a violation of his due process rights under the Fourteenth Amendment to the United States Constitution. Davis asserts that Jane, by her own admission, had few opportunities to view the assailant during the commission of the crime. Davis also points out that Jane’s descriptions of the assailant were inconsistent. Finally, Davis asserts that the descriptions provided by Jane did not even match Davis’s actual appearance. We disagree.
¶ 17. As noted, we must determine whether, under the “totality of the circumstances,” the identification was reliable. Biggers, 409 U.S. at 199, 93 S.Ct. 375; York v. State, 413 So.2d 1372, 1383 (Miss.1982). In resolving this issue, we consider the following factors:
1) The opportunity of the witness to view the accused at the time of the crime;
2) The degree of attention exhibited by the witness;
3) The accuracy of the witness’s prior description of the criminal;
4) The level of certainty exhibited by the witness at confrontation; and
5) The length of time between the crime and the confrontation.
York, 413 So.2d at 1383; Biggers, 409 U.S. at 199, 93 S.Ct. 375.
1) Jane’s opportunity to view Davis at the time of the crime.
¶ 18. Jane had ample opportunity to view her assailant at the time of the crime. Jane testified that she immediately turned on the living room fight when she heard the crashing sound come from the kitchen. Davis entered the room and confronted Jane. They struggled for several minutes and Jane admitted getting a good look at his face during the confrontation. Davis then took her to a backroom where he raped her. During the rape, Jane, pressed close to Davis, viewed his face. She also watched him go to the closet and pull out two jackets and try to stuff them into a bowling bag. Jane testified that they were in the bedroom for at least ten minutes; the bedroom fights, according to Jane, were on at least half of that time.
¶ 19. The Mississippi Supreme Court has held that this element of the Biggers test was satisfied where the sole witness, who was also the victim, testified to being in a well-fit area for several minutes. White v. State, 507 So.2d 98, 100 (Miss.1987). See also Ray, 503 So.2d at 223 (noting that one minute is enough time for a victim to identify assailant). The facts in the case at bar, like the similar cases before, satisfy this first element.
2) Jane’s degree of attention during the crime.
¶ 20. Although we can conceive of circumstances that would detract from the level of attention a victim might show towards his or her attacker, we do not find that to be the case here. Recognizing the evidence discussed under the first factor, we find that Jane viewed Davis several different times during the commission of the crime. Jane testified that she intentionally attempted to look at Davis every chance she . had, noting any distinguishing features he might have had. As discussed under the third element, Jane’s degree of attention was great as she was able to provide investigators with a detailed description of Davis, from his facial hair down to the type of shoes he was wearing.
*1267 3) The accuracy of the witness’s prior description of the criminal.
¶21. While in the hospital, Jane told police that a black male wearing hiking boots, blue pants and a jacket had raped her. She described the assailant with great specificity, noting that he was in his mid-twenties or thirties, had a mustache and “a little goatee beard thing.” Furthermore, she stated that the assailant was around 5' 5" in height and weighed 120-130 pounds. In subsequent interviews and testimony, Jane’s description of the assailant remained consistent. Moreover, Davis’s actual appearance, with a few minor exceptions, matched the descriptions Jane provided; therefore, this factor is satisfied.
4) The level of certainty demonstrated by the witnesses at the confrontation.
¶22. Jane was specific and certain in her descriptions of the assailant; only four days after the crime, she was able to pick him out of a photographic lineup. The record reflects that the police asked Jane to look through a book of photographs two days after the crime; she could not pick out the assailant. Two days later, the police came to her house with more photographs; this time, Jane picked out Davis from a group of six pictures. Officer Whitney Carvin, one of the policemen present at the identification, testified that Jane immediately pointed to the picture.of Davis and stated that he was responsible for the crimes. She never identified another as the responsible criminal. Even the day prior to the trial, at the suppression hearing, Jane identified Davis, for the first time in person, as the individual responsible for the crime. Given Jane’s unwavering certainty, we find this element of the test satisfied.

5)The length of time between the crime and the confrontation.

¶ 23. Only four days had passed from the time of the crime to the time when Jane identified Davis from the photographic lineup. This Court has held that an identification five to seven days following a crime was not significant, and certainly did not undermine the reliability of the identification. See Esco v. State, 755 So.2d 1248, 1254 (¶ 29) (Miss.Ct.App.2000).
¶ 24. In light of the foregoing reasons, we conclude that substantial evidence supported the reliability of Jane’s photographic identification of Davis, and the trial judge’s admission of the identification did not amount to clear error. This issue is without merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I BURGLARY OF A DWELLING; COUNT II RAPE; COUNT III ARMED ROBBERY; AND COUNT IV AGGRAVATED ASSAULT AND SENTENCE OF LIFE ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS AND BRANTLEY, JJ., CONCUR.
KING, P.J., CONCURS IN RESULT ONLY.
IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION.