# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-02027-SCT

*PAMALA ANN STANDISH ADCOCK*

*v.*

*CHRISTOPHER ALAN VAN NORMAN*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/2003 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | SHARKEY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PATRICIA PETERSON SMITH |
| ATTORNEY FOR APPELLEE: | SARAH A. HODNETT BROOKS |
| NATURE OF THE CASE: | DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART - 12/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Pamala Ann Standish Adcock and Christopher Alan Van Norman appeal a chancellor's judgment on a petition for custody and a petition for paternity. The chancellor granted Pamala permanent custody of the children, denied Christopher's petition for custody and denied Pamala's request for attorney's fees.  On appeal, the Court of Appeals affirmed in part, reversed in part, and remanded.  *See **Adcock v. Van Norman**,* 2005 WL 646502 (Miss. Ct. App. 2005). We granted certiorari to review the Court of Appeals' sua sponte invalidation of a judgment

from another trial court which was not the subject of the appeal. We find that the Court of Appeals' action in invalidating the judgment was error.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2. Pamala and Christopher met and started dating in December of 1999. Several weeks later, on December 31, Pamala told Christopher that she was pregnant with twins and that she had been pregnant when they met. Their sexual relationship began on that day. On January 3, 2000, Christopher accompanied Pamala to a doctor's appointment. They viewed a sonogram and saw the twins. Christopher promised to support Pamala, and they continued their relationship throughout her pregnancy.

¶3. Pamala and Christopher never married. The twins, Shane Anthony Van Norman and Hopelynn Nicole Van Norman, were born prematurely on May 3, 2000. The next day, on May 4, Pamala and Christopher each signed a voluntary acknowledgment of paternity. The twins' birth certificates, dated August 27, 2001, list Christopher as their natural father.

¶4. Pamala and Christopher lived together and both cared for the children together until their relationship ended in August of 2001, when they separated.

¶5. A few weeks after they separated, Christopher filed in the Chancery Court of Sharkey County a petition for custody of the children. Pamala's response was that Christopher was not the twins' natural father; she also asked the court to order a paternity test and award attorney's fee and damages for invasion of privacy. The chancellor entered an order granting temporary custody of the twins to Christopher directing Pamala, Christopher and the children to submit to a "blood paternity test." Pamala then filed a motion to dismiss Christopher's petition for custody. She argued that Christopher lacked standing to continue his pursuit of custody since

2

he was not the twins' biological father. The chancellor denied the motion to dismiss, finding that, by listing Christopher as the children's father on both the acknowledgment of paternity and the birth certificate, Christopher had the necessary standing to support his petition for custody. The chancellor again ordered a blood test to confirm paternity. The results of the blood tests confirmed that Christopher was not the biological father of the twins.

¶6. After several hearings, the chancellor awarded permanent care, custody, and control of the children to Pamala, denied Christopher's petition for custody and denied Pamala's request for attorney's fees and sanctions. Both Pamala and Christopher appealed. We affirm the Court of Appeals' judgment on all these issues except the Court of Appeals' sua sponte invalidation of a judgment which had not been appealed.[1]

¶7. In the Sharkey County Chancery Court matter, the chancellor stated that she was without judicial authority to order Pamala to allow to Christopher visitation rights. One month before the Sharkey County judgment was entered, the Warren County court entered a judgment which removed Christopher's name from each of the twin's birth certificate and changed the twins' last name from Van Norman to Adcock.[2]

¶8. Even though the Warren County judgment was not raised by either party on appeal, the Court of Appeals, sua sponte, addressed the Sharkey County chancellor's findings of fact and conclusions of law and applied the doctrine of priority jurisdiction:

---

[1]We affirm the Court of Appeals on the issues of Pamala's request for attorneys fees, whether Christopher's petition for custody was frivolous, the award of custody to Pamala and Pamala's claim of judicial bias.

[2]There is nothing in the record which would show what court in Warren County entered this judgment.

> We are concerned about this language. It is indeed unusual that the chancellor would spend fifty pages stating her factual findings and conclusions related to the Albright factors only to subsequently state that a court in another jurisdiction [Warren County] had already changed the birth certificates of these children. Our concern requires that we reverse and remand on this issue for further proceedings.

The Court of Appeals determined that, since the case at bar was filed before the matter in Warren County was filed, the Warren County judgment was invalid and of no effect. The Court of Appeals concluded:

> [W]e reverse and remand for the chancellor [Sharkey County] to consider whether there is sufficient evidence to revoke the legal rights Christopher obtained when he signed the voluntary acknowledgment of paternity and became the legal father of the children. If there is not such evidence, the chancellor shall declare null and void the order of the Warren County Chancery court and take such action to have Christopher's name replaced on their birth certificates and their names changed. The chancellor shall also enter an order to establish reasonable visitation for Christopher and to obligate Christopher to pay statutory child support.

*Adcock v. Van Norman*, 2005 WL 646502 **7, 10 (Miss. Ct. App. 2005) (citations & footnote omitted).

## DISCUSSION

¶9.     There are only three ways to reopen, amend and/or alter a final judgment entered by a court of competent jurisdiction. First, one of the parties may file an appeal to the Supreme Court. The Supreme Court then has jurisdiction to review the final judgment or to assign the appeal to the Court of Appeals, and one of those appellate courts will either affirm or alter the final judgment. The Mississippi Rules of Civil Procedure provide the other two procedures under which a judgment may be altered: (1) under Rule 59(e), a party may filed a motion to

4

alter or amend a judgment; and (2) under Rule 60, a litigant may receive relief from a judgment if one of the following is shown: a clerical mistake; fraud, misrepresentation or other misconduct; accident or mistake; newly discovered evidence; void judgment; discharge of judgment; or "any other reason justifying relief." *See generally* M.R.C.P. 59 & 60.

¶10.    Therefore, the only ways the Warren County judgment could be reopened and/or altered is for either Adcock or Van Norman to (1) file a Rule 59(3) motion to alter or amend the judgment; (2) file an M.R.C.P. 60 motion before the Warren County court or (3) appeal the judgment to the Supreme Court.    The Court of Appeals clearly lacked jurisdiction to set aside the Warren County judgment because that judgment was never appealed.    Furthermore, the Court of Appeals only has jurisdiction to hear a matter which has been assigned to it by the Supreme Court.    *See* Miss. Code Ann. § 9-4-3(1) (Rev. 2002) ("The Court of Appeals shall have the power to determine or otherwise dispose of any appeal or other proceeding assigned to it by the Supreme Court.").    Logic mandates the conclusion that if no appeal from the Warren County judgment was ever taken, jurisdiction to hear an appeal from the Warren County judgment was never conferred upon the Supreme Court; therefore the Supreme Court could not assign the appeal to the Court of Appeals, assignment being the *only* method by which the Court of Appeals could acquire jurisdiction to rule upon the matter.

## CONCLUSION

¶11.    We have no choice other than to reverse the Court of Appeals' action in invalidating the Warren County judgment and in reversing the Sharkey County judgment and remanding the case for further proceedings concerning the Warren County judgment.    The remainder of the

5

judgment of the Court of Appeals is affirmed. The judgment of the Sharkey County Chancery Court is affirmed.

¶12.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE SHARKEY COUNTY CHANCERY COURT IS AFFIRMED.**

**SMITH, C.J., COBB, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**