CARLTON, J.,
concurring in part and dissenting in part:
¶ 90. I respectfully concur in part and dissent in part with respect to the majority’s opinion in this heirship proceeding. Since I submit that the chancellor erred in allowing Randy’s mother, Joyce, to challenge Legand’s legitimacy and the prior determination of Randy’s paternity by his voluntary acknowledgment before his death, I concur with the majority’s determination that the chancellor erred in allowing the admission of the affidavit and DNA results into evidence.[4] I submit that both precedent and statutory law require that we acknowledge that prior to his death, Randy determined Legand’s legitimacy and paternity as a matter of law through his own voluntary acknowledgment of Legand’s paternity. See In re Farmer, 964 So.2d 498, 500 (¶¶ 4-5) (Miss.2007); Hogan v. Buckingham, 730 So.2d 15, 20 (¶¶ 20-21) (Miss.1998); Miss.Code Ann. § 91-l-15(3)(b) (Supp.2012).[5]
¶ 91. I would therefore reverse and render the judgment of the chancellor in favor of Legand, declaring Legand to be the sole heir-at-law and wrongful-death beneficiary of Randy since neither Joyce nor Randy’s estate may challenge Le-gand’s paternity, which was previously established by Randy himself prior to his death. This case, as in Hogan, 730 So.2d at 20 (¶¶ 20-21), constitutes an action to determine heirship, and Joyce (Randy’s mother) possessed no standing to challenge Randy’s voluntary acknowledgment that determined Legand’s legitimacy and paternity since the right and cause of action to rescind extinguished prior to Ran- *245 djfs death. Although the majority states that Legand failed to raise the issue of standing as an assignment of error on appeal, I submit that standing may be challenged at any time, even sua sponte by this Court. Benedict v. City of Hattiesburg, 693 So.2d 377, 381 (Miss.1997). The cause of action to rescind the voluntary acknowledgment of paternity extinguishes prior to Randy’s death. Therefore, neither Joyce nor Randy’s estate possessed to right to revive such dead cause of action or remedy, and Joyce and Randy’s estate lack standing to assert the extinguished right. Additionally, neither Joyce nor Randy’s estate were signatories to Randy’s voluntary acknowledgment of his paternity of Legand. Since the statutory rescission period expired prior to Randy’s death, both Joyce and Randy’s estate now lack standing to assert a right extinguished by the terms of the statute pertaining to voluntary acknowledgment of paternity by challenging the legitimacy of Legand. See In re Farmer, 964 So.2d at 500 (¶¶ 4-5) (voluntary acknowledgment of paternity prior to death of intestate is a determination of paternity and satisfies heirship).
¶ 92. The issue of standing also relates to the trial court’s subject-matter jurisdiction to consider a challenge to Randy’s voluntary acknowledgment, and a review of statutory law and case law shows causes of action may extinguish by operation of law under the terms of a controlling statute.[6] Since the cause of action and right to rescind and object to the voluntary acknowledgment of paternity expired, Randy’s estate possessed no cause of action and lacked standing to revive an extinguished right and cause of action. Prior to his death, Randy had a cause of action and right to object to his voluntary acknowledgment of paternity within the statutory period for rescission of his acknowledgment. However, the rescission period expired while Randy was alive, and the cause of action to contest his voluntary acknowledgment of paternity extinguished at that time, in accordance with the terms of the statute regarding voluntary acknowledgment of paternity. See Keller v. Citizens Bank, 399 So.2d 1332, 1336 (Miss.1981) (citation omitted). Since the rescission period expired without Randy’s objection, his estate may not now assert that extinguished claim. If the rescission period had not expired prior to Randy’s death, then the cause of action would still be alive, and his cause of action would have passed to the estate. In re Farmer, 964 So.2d at 500 (¶¶ 4-5), recognizes that a voluntary acknowledgment of paternity determines the issue, and since this issue was determined by Randy himself prior to his death, his estate possesses no existing cause of action to assert an extinguished cause of action. See also Keller, 399 So.2d at 1336 (citation omitted) (stating that statutes can define a right, a remedy, and when the right is extinguished).
¶ 93. As stated previously, since the estate has no existing cause of action to contest Randy’s voluntary acknowledgment, and the resulting previous paternity determination, then the estate lacks standing to assert an extinguished claim of right, and the trial court lacked subject-matter jurisdiction to hear this extinguished cause of action. Our jurisprudence has long recognized that statutes can define a right, a remedy, and when the right is extinguished. Keller, 399 So.2d at 1336.[7] The statute establishing the deter *246 mination of paternity by voluntary acknowledgment indeed defines within the terms of the statute itself when the cause of action to rescind and object accrues and expires. In this case, the statute defined when a signatory possessed the right to rescind and when such right expired. See Miss.Code Ann. § 93-9-28 (Supp.2012). Jurisprudence has recognized other statutes mandating that the failure to assert a right within a defined period extinguishes the right and remedy.[8] Jones v. Lovett, 755 So.2d 1248, 1246 (¶5) (Miss.Ct.App.2000) (overruled on other grounds). Randy’s estate fails to possess a legal or equitable interest in a cause of action that previously expired; therefore, Joyce and Randy’s estate lack standing to raise such claim on appeal.
¶ 94. A review of the record reflects that Randy died on October 21, 2006. Almost two years prior to his death, Randy signed a voluntary acknowledgment of paternity before a notary on December 23, 2004, reflecting he knew he was the father “listed” on Legand’s birth certificate, and not the biological father. The voluntary acknowledgment also reflects that Randy certified that he understood his rights, responsibilities, and specifically his right to rescind his acknowledgment of paternity. The record reflects that prior to his death, Randy took none of the steps prescribed by statute to have his name removed as the listed father on Legend’s birth certificate, in accordance with Mississippi Code Annotated section 41-57-23(1) (Supp. 2012).[9]
¶ 95. In addition to taking no steps to remove his name as legal father from Le-gand’s birth certificate, Randy raised no challenge, as signatory, to his acknowledgment of Legand’s paternity within the rescission period prescribed by statute following such acknowledgment.[10] Therefore, I submit that since the rescission period expired, Randy’s acknowledgment of his paternity “may be challenged in court only on the basis of fraud, duress, or material mistake of fact.”[11] See Miss. Code Ann. § 41-57-23(3)(b). Since the parties raise no evidence of fraud, duress, or mistake of material fact, then no justi-ciable issue exists in this case to chal *247 lenge the prior determination of the legitimacy of Legand. See In re Farmer, 964 So.2d at 500 (¶¶ 4-5); Hogan, 730 So.2d at 20 (¶¶ 20-21). The chancellor’s findings reflect that after Legand’s birth, Randy and Kelly, Legand’s mother, signed the acknowledgment-of-paternity form.[12] The birth certificate was signed on December 23, 2004. The record contains the Mississippi State Board of Health Handbook on Registration and Reporting of Vital Events, explaining procedures applicable to birth certificates. Rule 19 of Chapter 2 of the handbook provides that if the child’s mother was married at the time of conception or any time between conception and birth, the surname of the child shall be that of the husband. See Miss.Code Ann. § 41-57-23. However, the handbook explains that an affidavit filed at birth by both the listed mother and father may alter this rule. Kelly and Randy agreed to provide Le-gand with a surname different from Randy’s surname, as permitted by this rule. The record reflects that Randy signed the acknowledgment of paternity before a notary, which identified him as the listed legal father on the birth certificate and also reflected the child’s name as Legand Dakota Benton on the birth certificate.

No Evidence of Fraud, Duress, or Mistake of Fact

¶ 96. The chancellor’s findings of fact reflect that Randy and Kelly divorced on July 30, 2004, and the chancellor noted that Randy’s sworn divorce complaint stated that they had been separated since November 2002. The chancellor’s findings further reflect that around the time of Legand’s conception, Kelly was living with another man; she engaged in sexual relations with Randy and two to three other men; and she and Randy were not yet divorced. Kelly gave birth to Legand on December 21, 2004, almost five months after her divorce from Randy. The record also reflects that Kelly and Randy were making no attempt to engage in a monogamous marital relationship when Kelly conceived Legand.
¶ 97. The fact that Randy was not Le-gand’s biological[13] father is not new information. As a signatory to a Form 456 from the Vital Records division of the Mississippi Department of Health entitled Acknowledgment of Paternity/Name of Child, Randy certified that he knew at that time of signing that he was not the biological father of Legand, but rather the listed father on the birth certificate. The record in this case, as stated above, contains no evidence of any fraud, duress, or mistake of fact related to Randy’s voluntary acknowledgment of paternity of Legand.[14] On this acknowledgment-of-paternity form, Randy’s signature certified specifically that the birth certificate contained the correct information for the child’s father listed on the birth certificate in items 7(a) and 7(b), requiring the father’s name, race, birth date, and state of birth.[15] As ex *248 plained, Randy’s voluntary acknowledgment of paternity shows he knew he constituted the listed father and specifically reflects that Randy’s rights and responsibilities to the child, as well as his right to rescind, had been explained to him.
¶ 98. In addition to Randy’s voluntary acknowledgment of paternity, I submit that this posthumous attempt to disestablish Randy as the legal father of Legand also fails under Mississippi Code Annotated section 93-9-10(3)(a) and (b) (Supp. 2012). Section 93-9-10 sets forth the procedures to disestablish paternity by a legal father. Subsection 3 provides the following:
(3) Notwithstanding subsection (2) of this section, a court shall not set aside the paternity determination or child support order if the legal father engaged in any of the following conduct:
(a) Married or cohabited with the mother of the child and voluntarily assumed the parental obligation and duty to support the child after having knowledge that he is not the biological father of the child;
(b) Consented to be named as the biological father on the child’s birth certificate and signed the birth certificate application or executed a simple acknowledgment of paternity and failed to withdraw consent or acknowledgment within the time provided for by law in [Mississippi Codes Annotated] [s]ections 93-9-9 and 93-9-28, unless he can prove fraud, duress or material mistake of fact[.]
Miss.Code Ann. § 93-9-10(3)(a)-(b).
¶ 99. I respectfully submit that the majority and the chancellor in this case have erred in disregarding Randy’s acknowledgment of paternity. The record shows the chancellor disregarded the acknowledgment because Randy and Kelly had been married during the time between conception and birth.[16] The chancellor, however, acknowledged that the law presumes that a child conceived during a marriage is an issue of the marriage. The chancellor disregarded section 93-9-10(3)(b) and section 91-l-15(3)(b) in allowing the challenge to the determination of legitimacy of Legand that occurred prior to Randy’s death. See also Madden v. Madden, 338 So.2d 1000, 1001-02 (Miss.1976) (presumption of legitimacy is strongest in the law and is for the benefit of the child so legitimized). We must also acknowledge that in reviewing paternity challenges relating to children considered to be born of a marriage, the standard employed by our jurisprudence is to determine the best interest of the child. See Hogan, 730 So.2d at 20 (¶¶ 20-21).
¶ 100. I submit that Randy’s voluntary acknowledgment of paternity should not be disregarded. Upon expiration of the rescission period, statutory law allows a voluntary acknowledgment to be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the challenger.[17] I submit that no rescission of the voluntary acknowledgment by Randy occurred during *249 the rescission period defined by section 41-57-23(8) or as defined in section 93-9-28 for children born out of wedlock, and the record reflects no fraud, duress or material mistake of fact.[18] The determination of Legand’s paternity by Randy’s voluntary acknowledgment is determinative and final.[19] Therefore, this issue of paternity may not be raised again in a proceeding to determine heirship by the decedent’s mother. See Hogan, 730 So.2d at 20 (¶¶ 20-21).[20]
¶ 101. I submit that the record fails to reflect that Joyce possessed standing in this heirship proceeding to challenge the prior determination of the legitimacy of Legand, established by Randy’s voluntary acknowledgment of paternity prior to his death. Accordingly, I respectfully concur in part and dissent in part with respect to the majority’s opinion.

. Randy died on October 21, 2006, as a result of a collision with a Kansas City Railroad train, and Randy’s mother, Joyce, filed suit in the Circuit Court of Kemper County, Mississippi, on behalf of all wrongful-death beneficiaries under the provisions of Mississippi Code Annotated section 11-7-13 (Rev.2004). Faced with a disputed issue concerning the lawful heirs of Randy, the circuit court stayed the action and ordered Randy’s mother to open an estate and to file an action in chancery court to determine Randy’s heirs. Joyce filed to open an estate and was appointed administratrix. She also filed a petition to determine Randy’s heirs and wrongful-death beneficiaries.

. In support of its positions and appeal, the appellant cites the additional precedent of Adcock v. Van Norman, 917 So.2d 86, 89 (¶ 10) (Miss.2005) (holding the Court of Appeals lacked jurisdiction to set aside the circuit court’s judgment ordering the removal of ex-boyfriend’s name from the birth certificate of the mother’s twins).

. See, e.g., McCain v. Memphis Hardwood Flooring Co., 725 So.2d 788, 794 (Miss.1998); Martin v. Reikes, 587 So.2d 285, 286 (Miss.1991).

. Compare In re Estate of England, 846 So.2d 1060, 1065 (¶ 14) (Miss.Ct.App.2003).

. See Martin v. Reikes, 587 So.2d 285, 286 (Miss.1991) (recognizing that Mississippi Code Annotated section 11-3-43 requires refund or payment of court costs by the appellee when a case is reversed and remanded, and if such a payment is not made within two years after the decision in the supreme court, then both the right and remedy stand forever barred and extinguished); Keller, 399 So.2d at 1336 (citations omitted) (recognizing a statute wherein upon completion of the limitations period, the remedy is denied, the action barred, and the right itself extinguished, leaving nothing to revive).

. See Miss.Code Ann. § 41-57-23 (defining procedures to change name of listed father); Miss.Code Ann. § 93-9-28 (providing voluntary acknowledgment of paternity of a child born out of wedlock cannot be challenged by alleged father after expiration of one year following such acknowledgment, absent fraud, duress, or material mistake of fact).

.See In re Farmer, 964 So.2d at 500 (¶¶ 4-5).

.Kelly also asserts that Randy voluntarily acknowledged the paternity of Legand two days after Legand's birth. Kelly acknowledges that Randy remained unmarried at the time of his death, and that he had no other children. Her brief cites to the record reflecting evidence showing Randy treated Legand as his own by visiting frequently, enjoying overnight visits approximately two times during each week on week nights, and keeping Legand on weekends; they also enjoyed activities together such as going to McDonald’s and the park. Kelly argues that no other man visited Legand except his maternal grandfather, and that Randy supported Legand by providing him food, diapers, and clothes, and supplying medicine and cash support.

. This form was set forth as trial exhibit 6.

. See Miss.Code Ann. § 93-9-28(2)(c) (only gives alleged father right to request genetic testing to challenge voluntary acknowledgment of paternity).

. In this challenge to Legand’s paternity and legitimacy, Joyce does not attempt to argue or raise any evidence of fraud, duress, or material mistake of fact exist herein related to Randy's voluntary acknowledgment of paternity of Legand.

.See Miss.Code § 91 — 1—15(3)(b). See also In re Johnson, 767 So.2d 181, 186 (¶ 17) (Miss.2000) (information on birth certificate possessed "sufficient indicia to indicate trustworthiness,” despite irregularities); In re Farmer, 964 So.2d at 500 (¶¶ 4-5) (Supreme court held that a voluntary acknowledgment of paternity prior to the death of intestate is determination of paternity and satisfies heirship.).

. But see In re Johnson, 767 So.2d at 186 (¶ 17) (information on birth certificate possessed "sufficient indicia to indicate trustworthiness,” despite irregularities).

. Interestingly, section 41-57-23(3) allows the listed mother and father on the birth certificate to sign an affidavit to change the child's surname to a name other than the listed father. This same statute also permits voluntary acknowledgment of paternity and allows a signatory to such acknowledgment to rescind the acknowledgment within the earlier of one year, or a judicial proceeding related to the child. As stated, the acknowledgment may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the challenger.

. Section 41-57-23(3) allows any signatory to rescind within the earlier of one year or the date of a judicial proceeding relating to the child, including a proceeding in which the signatory is a party. Section 93-9-28 addresses children bom out of wedlock without a legal father and allows rescission of a signed voluntary acknowledgment by either signatory within the earlier of one year or the date of judicial proceeding relating to the child where the signatory is a party; and after one year, the alleged father possesses the right to challenge only on the basis of fraud, duress, or mistake of material fact.

. See In re Farmer, 964 So.2d at 500 (¶¶ 4-5).

. See also Miss.Code Ann. § 93-9-9(3) (Supp.2012) ("Upon request of the parents for legitimization of a child under this section, the surname of the child shall be changed on the certificate to that of the father.”) In Rice v. Merkich, 34 So.3d 555, 558-560 (¶¶ 10-18) (Miss.2010), the supreme court reviewed section 41-57-23(2) and held that the surname of the child shall be that of the father. The court cited section 41-57-23(2), which provides that this rule may be altered when an affidavit is filed at birth by both the listed mother and father. Rice, 34 So.3d at 558 (¶ 10). The court noted that the statute provides that if the mother was married at the time of conception or birth or if a father is already listed on the birth certificate, action must be taken under 41-57-23(1) to add or change the name of the father. Id. The Rice court also cited Rule 103.04 of the Rules Governing the Registration and Certification of Vital Events by the Mississippi State Department of Health, which addresses: (1) "conditions under which the father's name may be entered on the [birth] certificate”; (2) "the specification of the child’s name under each condition”; and (3) "conditions under which the child’s surname may be different from either the father's surname or mother's surname if no father is listed.” Id.; see also Thornhill v. Van Dan, 918 So.2d 725, 732-33 (¶¶ 31-32) (Miss.Ct.App.2005) (Stating that the alleged father’s name on the birth certificate "has legal significance”).